## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JACLYN N.,[1]

      **Plaintiff,**

                              **Case No. 2:23-cv-22456**
      **v.**                            **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,[2]**
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jaclyn N. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On January 7, 2021, Plaintiff filed her application for benefits, alleging that she has been disabled since May 20, 2019. R. 840, 848, 979–85. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

reconsideration. R. 859–63, 866–70. Plaintiff sought a *de novo* hearing before an administrative

law judge ("ALJ"). R. 872–73. ALJ Leonard Costa held a hearing on June 13, 2022, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 817–39. In a

decision dated August 23, 2022, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from May 20, 2019, Plaintiff's alleged disability onset date,

through the date of that decision. R. 11–21. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on September 18,

2023. R. 1–7 (noting, *inter alia*, that Plaintiff had also submitted medical records from Debra

Goldstein, M.D., dated March 17, 2017 to July 14, 2023 (420 pages); from Nabila A. Gandhi,

M.D., dated March 7, 2019 to March 17, 2023 (237 pages); from Mary Ann Curiba, M.D., dated

October 14, 2021 to July 28, 2023 (65 pages); and from Farzin Aliasgharpour, M.D., dated

November 1, 2021 to March 10, 2022 (52 pages), but finding that "this evidence does not show a

reasonable probability that it would change the outcome of the decision. We did not exhibit this

evidence"). Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

April 26, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

No. 12.[3] On February 25, 2025, the case was reassigned to the undersigned. ECF No. 13. The

matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

      The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the court may enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

5

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous

period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in

substantial gainful activity between May 20, 2019, her alleged disability onset date, and the date

of the decision. R. 13. Plaintiff's insured status for benefits lapsed on December 31, 2024. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

spondylosis at L5, obesity, osteopenia, Crohn's disease, and gastroparesis. *Id*. The ALJ also

found that hearing loss, depressive disorder, and anxiety disorder were not severe impairments.

R. 13–15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 15–16.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to

various additional limitations. R. 16–21. The ALJ also found that this RFC permitted the

performance of Plaintiff's past relevant work as a civil engineer technician R. 21.

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the

Social Security Act from May 20, 2019, her alleged disability onset date, through the date of the

decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and also argues that remand is

warranted based on new and material evidence. Plaintiff asks that the decision of the

Commissioner be reversed and remanded with directions for the granting of benefits or,

alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 11. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Debra Goldstein, M.D.

On March 7, 2020, Debra Goldstein, M.D., Plaintiff's treating physician, completed a two-page, check-the-box, and fill-in-the-blank form. R. 2316–17 ("March 2020 opinion"). Dr. Goldstein identified Crohn's disease and gastroparesis as impairments that affected Plaintiff's functionality, indicating that these impairments were incurable and caused severe, unpredictable flares; the doctor also stated that Plaintiff had "nausea all the time. Meds not helping[;] diarrhea & incontinence[.]" R. 2316. According to Dr. Goldstein, Plaintiff could continuously sit, stand, walk, lift, climb/balance, stoop/kneel, crouch/crawl, reach/handle, and use her hands for pushing/pulling and fine manipulations. *Id*. However, Plaintiff was unable to work 25 hours a week with those restrictions/limitations because of "nausea & frequent vomiting[.]" R. 2317. Her gastrointestinal disorder resulted in "frequent vomiting & diarrhea", conditions that were expected to last "indefinitely[.]" *Id*. Asked to list the objective findings that supported those restrictions and that would prevent a return to work 25 hours per week, Dr. Goldstein responded: "Abnormal gastric emptying test, Abnormal MRI, abnormal bacterial overgrowth test; frequent nausea & vomiting[.]" *Id*. Plaintiff's medications consisted of Stelara, pantoprazole, baclofen, Zofran, scopolamine patch, and hyoscyamine, and Dr. Goldstein was "[a]waiting new biologic therapy" and possible new medications. *Id*.

On June 7, 2022, Dr. Goldstein authored a letter addressed "To Whom It May Concern[,]" advising that Plaintiff "is my gastroenterology patient. She is unable to work due to severe idiopathic gastroparesis requiring multiple and intermittent intragastric BOTOX injections, and concurrent Crohn's disease." R. 2321 ("June 2022 letter") (reflecting further her medical credentials "MD, FACP, FACG [Fellow of the American College of Gastroenterology]")

### B.    Nabila Gandhi, M.D.

On January 20, 2022, Nabila Gandhi, M.D., another treating physician, completed a three-page, check-the-box, and fill-in-the-blank form entitled "Physical Capacities Evaluation." R. 1802–04. Dr. Gandhi opined that Plaintiff could sit, stand, and walk for one hour at a time, for a total of one hour in an eight-hour work day. R. 1802. Plaintiff could use her hands for repetitive actions such as simple grasping, pushing and pulling, and fine manipulation, and could use her right foot for repetitive movements such as operating foot controls, but could not do so with her left foot. *Id*. Plaintiff could continuously lift and carry up to 5 pounds, could occasionally lift up to 10 pounds, could continuously carry 5 to 10 pounds, could occasionally lift and carry 11 to 20 pounds, but could never lift or carry more than 20 pounds. R. 1803. She could never bend, squat, or crawl, but could continuously climb and reach above shoulder level. *Id*. According to Dr. Gandhi, Plaintiff had no restrictions regarding unprotected heights, being around moving machinery, driving automotive equipment, but had a "mild" restriction regarding exposure to dust, fumes, and gasses and was "[t]otal[ly] restricted from exposure to marked changes in temperature and humidity. R. 1804. Asked to identify the objective evidence upon which she based her opinions, Dr. Gandhi responded, "consult[,] gastric emptying scan[,] colonoscopy[.]" *Id*.

### C.    State Agency Reviewing Medical Consultants

Mohammad Rizwan, M.D., conducted an initial review of Plaintiff's medical record on

behalf of the state agency on April 30, 2021. R. 841–46, 850 (reflecting Dr. Rizwan's credentials). According to Dr. Rizwan, Plaintiff could occasionally lift and/or carry 20 pounds, could frequently lift and/or carry 10 pounds, and had an unlimited ability to push and/or pull with her upper and lower extremities. R. 845. Plaintiff could stand and/or walk (with normal breaks) as well as sit (with normal breaks) for a total of about 6 hours in an 8-hour day. *Id.* Dr. Rizwan explained these exertional limitations and supporting evidence as follows: "38 yo F alleging enteritis/HTN/thyroid disease/gastroparesis and anxiety. Claimant has stable Crohn's disease and thyroid disease. mild as [sic]asthma. Compazine helping gastroparesis. NO end organ damage from HTN[.]" *Id.* Dr. Rizwan saw no postural, manipulative, visual, or communicative limitations. *Id.* As for environmental limitations, Dr. Rizwan opined that Plaintiff could have unlimited exposure to vibration and hazards (machinery, heights, etc.), but should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, and fumes, odors, dusts, gases, and poor ventilation. *Id.*

Joseph Sobelman, M.D.[4] reviewed Plaintiff's medical record upon reconsideration for the state agency on October 4, 2021. R. 849–55. Dr. Sobelman agreed with Dr. Rizwan's findings and limitations, explaining that "[t]he additional evidence provides no basis to revise the DDS assessment of the initial claim. Accordingly, the rating is affirmed." R. 853.

## V.    DISCUSSION

### A.    Opinion Evidence

Plaintiff challenges the ALJ's consideration of the opinions of Doctors Goldstein and Gandhi. *Plaintiff's Brief*, ECF No. 6, pp. 25 – 34; *Plaintiff's Reply Brief*, ECF No. 10, pp. 11–17. Plaintiff's arguments are not well taken.

---

[4] The ALJ identifies this medical consultant's credentials as "M.D." R. 19.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors,

---

[5] As previously noted, Plaintiff's claim was filed on January 7, 2021.

including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires an ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the

12

ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In this case, at step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs; stoop; kneel; crouch, balance, or crawl. She can only work in moderate noise environments as defined in SCO3. *She would require ready access to restroom and the claimant would be off-task approximately 10% of the workday due to additional restroom breaks and pain, which can cause difficulty with concentration.*

R. 16 (emphasis added); *see also* R. 19 (explaining further that "[r]egarding the claimant's Crohn's disease and gastroparesis, the RFC provides specific limitations that she would require ready access to a restroom, and she would be off tasks approximately 10% of the workday due to additional bathroom breaks and pain"). In making this finding, the ALJ characterized, *inter alia*, Dr. Goldstein's March 2020 opinion and June 2022 letter as unpersuasive, reasoning as follows:

> On March 7, 2020, Debra Goldstein, M.D., noted claimant can continuously sit, stand, and walk but then noted she [is] unable to work due to nausea and vomiting. The undersigned finds this opinion not persuasive (30F). The objective evidence does not support the continuously sit, stand, and walk as the record shows the claimant is clinically obese and she has spondylosis at L5 and standing/walking 6 hours in an 8-hour workday is more appropriate. Furthermore, the opinion is inconsistent with subsequent treatment records that show the claimant's Chron's [sic] disease was stable (5F/6). Lastly, statements that a claimant is "disabled", "unable to work", "can or cannot perform a past job", or "meets a Listing", or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability.

> On June 7, 2022, Debra Goldstein further noted in a MSS that Jaclyn N[.]is my gastroenterology patient. She is unable to work due to severe idiopathic gastroparesis requiring multiple medications and intermittent intragastric Botox injections, and concurrent Chron's [sic] disease (34F). The undersigned finds the

13

opinion unpersuasive. The statement only provides conclusions, and no quantitative limitations were documented. Furthermore, statements that a claimant is "disabled", "unable to work", "can or cannot perform a past job", or "meets a Listing", or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability.

R. 20–21. The ALJ also considered Dr. Gandhi's opinion, finding it persuasive in some respects and unpersuasive in other respects:

On January 20, 2022, Nabila Gandhi, M.D. opined Ms. N[.]is unable to perform more than one hour of sitting, standing, and walking in an eight-hour workday (13F). Dr. Gandhi further opined the claimant can occasionally lift/carry up to 20 pounds. She can continuously lift/carry up to 5 pounds. She can never bend, squat, or crawl and she can continuously climb or reach above shoulder level. The claimant has no restrictions for unprotected heights, being around moving machinery and driving automotive equipment. The [report] has mild restrictions in exposure to dust, fumes and gases and total restrictions to exposure to marked changes in temperature and humidity. The undersigned finds the opinion persuasive in some ways and unpersuasive in other ways. The objective evidence supports Dr. Gandhi's lift/carry limitations as although the records show spondylosis at L5, physical examinations continued to reveal normal gait, normal strength, and normal neurological examinations (5F, 8F, 25F). However, the stand/walk limitations are not supported by Dr. Gandhi's objective examination that showed normal strength and normal ambulation (See 23F and 25F). Furthermore, the postural and environmental limitations are not consistent with the later evidence that shows that the claimant did not have any clinical findings that demonstrated reduced ranges of motion in his joints, any objective findings of swelling, deformities, instability, reduced grip strength, sensory changes, reflex changes, problems sleeping, abnormal posture, tenderness, crepitus, trigger points, redness, swelling, muscle spasms, weaknesses, or atrophy, abnormal gait, or positive straight leg raises (See 26F).

R. 19–20.

Turning first to Plaintiff's challenge relating to Dr. Goldstein's opinion, Plaintiff complains that the ALJ improperly rejected Dr. Goldstein's opinion that Plaintiff was unable to work 25 hours a week as a statement on an issue reserved to the Commissioner. *Plaintiff's Brief*, ECF No. 6, pp. 27–29; *Plaintiff's Reply Brief*, ECF No. 11, p. 2; *see also* R. 20. Plaintiff's argument is not well taken. For claims such as Plaintiff's, a "medical opinion is a statement from

a medical source about what [a claimant] can still do despite [her] impairment(s) and whether

[the claimant has] one or more impairment-related limitations or restrictions" in her ability to

perform, *inter alia*, the physical demands of work activities, such as sitting, standing, walking,

lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural

functions); ability to perform mental demands of work activities, such as understanding,

remembering, maintaining concentration, persistence, or pace, carrying out instructions, or

responding appropriately to supervision, co-workers, or work pressures in a work setting; ability

to perform other demands of work, such as seeing, hearing, or using other senses; and ability to

adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Statements that a claimant is or is

not "disabled, blind, able to work or able to perform regular or continuing work" are statements

on issues reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i). In her June 2022 letter,

Dr. Goldstein specifically stated that Plaintiff "is unable to work[,]" R. 2321, and therefore is

precisely a statement on an issue reserved to the Commissioner. *Id*.; *see also Louis v. Comm'r*

*Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform

occupational duties is a legal determination reserved for the Commissioner.") (citations omitted);

*cf. Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not

obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because

the opinion related to the ultimate issue of disability—an issue reserved exclusively to the

Commissioner."). Similarly, the Court is not persuaded that Dr. Goldstein's opinion that Plaintiff

cannot return to working 25 hours per week, R. 2317, is merely "a medical opinion regarding

Plaintiff's ability to show up to work and stay on task for a certain number of hours each week."

*Plaintiff's Brief*, ECF No. 11, p. 2. Rather, this opinion is, in reality, a statement regarding

Plaintiff's inability to work, a topic that is reserved exclusively to the Commissioner. *See Louis*,

808 F. App'x at 118; *Zonak*, 290 F. App'x at 497; *cf. Honey v. Bisignano*, No. 3:23-CV-1382, 2025 WL 2712426, at *5 (M.D. Pa. Sept. 23, 2025) (finding that a doctor's statement that the claimant is "unable to work full time (8 hours a day, 5 days a week) in any capacity" constitutes a statement on an issue reserved to the Commissioner); *Jones v. Kijakazi*, No. CV 20-1074-SRF, 2022 WL 1016610, at *9 (D. Del. Apr. 5, 2022) ("[T]he ALJ was not obligated to assign any weight to Dr. Afzal's statements that Plaintiff would not be able to work on a full-time basis for six to twelve months, or that she could work on a part-time basis for ten hours per week" because the ALJ "correctly stated" that this physician's "opinions regarding Plaintiff's ability to work address an issue reserved for the Commissioner"); *Carey v. Comm'r of Soc. Sec.*, No. CV 18-62, 2019 WL 1359178, at *1 n.1 (W.D. Pa. Mar. 26, 2019) (finding ALJ's explanation for giving little weight to opinion was sufficient where "the ALJ explained that he gave Dr. Wahrenberger's opinion that Plaintiff could work no more than 20 hours per week little weight because the determination of whether a plaintiff is able to work is an issue reserved to the Commissioner").

Plaintiff also argues that the ALJ did not properly consider the supportability and consistency of Dr. Goldstein's March 2020 opinion. *Plaintiff's Brief*, ECF No. 6, pp. 29–31. As to supportability, Plaintiff argues that this physician "made it explicitly clear" that she based her opinion on "the results of a gastric emptying study and an MR enterography and clinical evidence of constant nausea, diarrhea, and incontinence[,]" but that the ALJ erred in failing to consider and discuss these explanations. *Id.* at 29 (citing R. 2316).[6] The Court is not persuaded

---

[6] Plaintiff further complains that the ALJ found that objective evidence did not "support" the finding that Plaintiff could continuously sit, stand, and walk, arguing that such findings are "irrelevant" because Plaintiff does not allege disability due to a musculoskeletal or neurological impairment. *Plaintiff's Brief*, ECF No. 6, pp. 30–31; *see also Plaintiff's Reply Brief*, ECF No. 11, pp. 2–3. This complaint misses the mark. The ALJ discussed these exertional limitations because

that the ALJ committed reversible error on this issue. As detailed above, Dr. Goldstein opined that Plaintiff could constantly perform exertional activities and did not restrict Plaintiff's ability to engage in such activities despite her nausea, diarrhea, and incontinence. R. 2316. To the extent that Plaintiff suggests that the ALJ erred in failing to expressly consider Dr. Goldstein's statements regarding the gastric emptying study, MR enterography, and clinical evidence as they relate to that physician's finding that Plaintiff could not work 25 hours a week, this Court has already explained that such an opinion impermissibly addresses an issue reserved to the Commissioner.

In challenging the ALJ's consideration of the consistency of Dr. Goldstein's opinion, *Plaintiff's Brief*, ECF No. 6, pp. 29–30, Plaintiff points to record evidence that she believes "document[s] numerous abnormalities", *id.*, but which Plaintiff fails to otherwise identify. To the extent that Plaintiff intends to suggest that this argument supports the doctor's statement that Plaintiff cannot work 25 hours a week, that argument.

Plaintiff further complains that the ALJ failed to compare Dr. Goldstein's March 2020 opinion with Dr. Gandhi's opinion, asserting that their opinions "are not only *consistent with each other* but also with treatment records." *Plaintiff's Brief*, ECF No. 6, pp. 29–30 (emphasis added). However, the above summary of these opinions belies this assertion. The treating opinions are not consistent with each other: Dr. Goldstein opined that Plaintiff can constantly sit, stand, and walk, R. 2316, while Dr. Gandhi opined that Plaintiff can sit, stand, and walk for only a total of one hour in an eight-hour work day, R. 1802. In short, the ALJ's consideration of Dr.

they were part of Dr. Goldstein's March 2020 opinion. R. 20, 2316. Plaintiff's similar argument as it relates to Dr. Gandhi's opinion suffers the same flaw. R. 20, 1802–03.

Goldstein's March 2020 opinion or June 2022 letter does not warrant reversal of the Commissioner's decision.

Plaintiff also challenges the ALJ's discussion of Dr. Gandhi's opinion at step four, arguing that this opinion was properly supported because this doctor relied on findings similar to those of Dr. Goldstein, *i.e.*, consultation findings, gastric emptying scan, and colonoscopy. *Plaintiff's Brief*, ECF No. 6, p. 29. However, Plaintiff has not explained—nor is it apparent to the Court—how this evidence supports the doctor's opined physical limitations, including, *inter alia*, a complete restriction on bending or sitting for more than one hour in an eight-hour work day. R. 1802–04; *cf. Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."). To the extent that Plaintiff contends that the ALJ "failed to compare the consistency of the opinions from the treating experts with each other[,]" that argument is unavailing for the reasons already explained in connection with Dr. Goldstein's March 2020 opinion. Accordingly, Plaintiff has not persuaded this Court that remand is warranted based on the ALJ's consideration of Dr. Gandhi's opinion.

Plaintiff appears to also suggest that the ALJ's consideration of the opinions of Dr. Goldstein and Dr. Gandhi is defective because these physicians had a long-time treating relationship with Plaintiff and because Dr. Goldstein has a specialty in gastroenterology. *See Plaintiff's Brief*, ECF No. 6, pp. 33–34. For the reasons already discussed, the ALJ properly considered the supportability and consistency of these treating opinions. R. 19–21; 20 C.F.R. § 404.1520c(1)−(2). Although the ALJ did not expressly discuss Dr. Goldstein's specialty in gastroenterology or the length of these providers' treating relationship with Plaintiff, the ALJ

specifically discussed the June 2022 letter, which reflects, *inter alia*, Dr. Goldstein's

specialization, R. 2321, and the ALJ specifically discussed treatment records from this physician

and Dr. Gandhi, R. 17–20 (citing, *inter alia*, Exhibits 8F, R. 1432–1589; 17F, R. 1934–2056;

18F, R. 2057–74; 25F, R. 2258–61), which reflect, *inter alia*, these treating providers'

relationship with Plaintiff over a period of years. In any event, any failure on the part of the ALJ

to expressly discuss these factors does not require remand where, as here, a comprehensive

review of the record provides substantial support for the ALJ's evaluation of these treating

providers' opinions. *See* 20 C.F.R. § 404.1520c(b)(2) (explaining that the factors of

supportability and consistency "are the most important factors" and that an ALJ "may, but [is]

not required to, explain how" he considered other regulatory factors, including relationship with

the claimant, specialization, and other factors); *Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL

6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties

when he "explained that the treatment records were only partly consistent with and supportive

of" the medical opinion because an ALJ "must only explicitly discuss the two most important

factors: consistency and supportability").

      In continuing to challenge the opinion evidence, Plaintiff complains that the ALJ erred in

relying on the opinions of the state agency medical consultants, Drs. Rizwan and Sobelman.

*Plaintiff's Brief*, ECF No. 6, pp. 32–33. The ALJ found these opinions to be partially persuasive,

explaining as follows:

> The undersigned finds the opinion of the State agency medical consultants at the
> initial and reconsideration level persuasive in some ways and unpersuasive in other
> ways (2A and 4A). On April 30, 2021, Mohammad Rizwan, M.D., opined the
> claimant was limited to light work except she must avoid concentrated exposure to
> extreme cold, extreme hot, wetness, humidity, nose, and fumes, odors, dusts, gases,
> or poor ventilation. On October 4, 2021, Joseph Sobelman, M.D., affirmed the
> opinion of Dr. Rizwan. The objective evidence they reviewed supports limiting the

> claimant to light work as the evidence showed [she] suffers from gastroparesis and Chron's [sic] disease, which is stable (1F, 5F, 8F, 18F). However, the record further revealed relatively normal physical examinations including normal gait, normal neurologic exams, and normal sensory exams (See 1F, 5F and 7F). However, the environmental limitations are not consistent with the record as the records show normal respiratory exams and no hospitalizations for asthma.

R. 19. In challenging this finding, Plaintiff specifically complains that "[i]t is hard to fathom how opinions from non-treating, non-examining consultants who are not relevant specialists and who reviewed a medical record that ended a year before the ALJ's decision was issued are better supported and consistent than the treating sources, including a specialist, regarding this same condition." *Plaintiff's Brief*, ECF No. 6, p. 33 (arguing further that the ALJ failed to explain his finding). Plaintiff also contends that "the rule in the Third Circuit for nearly four decades is that opinions from non-examining sources, standing alone, are not substantial evidence in the face of well-supported opinions from treating sources." *Id*. (citations omitted). Plaintiff's arguments are not well taken.

State agency physicians are experts in Social Security disability programs. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may rely on a reviewing state agency physician's findings even where there is a lapse of time between the state agency report and the ALJ's decision. *Cf. Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts

20

whenever new medical evidence is available."). Accordingly, in this case, the ALJ did not err in finding the state agency medical consultants' opinion persuasive in some ways simply because there was a lapse in time between their opinions (issued in April and October 2021) and the ALJ's decision (issued in August 2022). *Id*. Notably, Plaintiff points to no evidence post-dating these state agency opinions that undermines these opinions. *See Plaintiff's Brief*, ECF No. 6, pp. 32–34; *see also Shinseki*, 556 U.S. at 409–10. Moreover, Plaintiff relies in error on "the rule in the Third Circuit for nearly four decades" that favors treating opinions. *Plaintiff's Brief*, ECF No. 6, p. 33. As previously explained, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources for claims such as Plaintiff's , which was filed in January 2021. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a).

For all these reasons, the ALJ's consideration of the opinions of Dr. Goldstein, Dr. Gandhi, and the state agency medical consultants enjoy substantial support in the record and will not serve as a basis for remand.

## B.    Subjective Statements

Plaintiff also argues that the ALJ erred in his consideration of Plaintiff's subjective statements. *Plaintiff's Brief*, ECF No. 6, pp. 34–37; *Plaintiff's Reply Brief*, ECF No. 11, p. 5. For the reasons that follow, the Court is not persuaded that this issue requires remand.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 16–17, 19. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 17. At step four, the ALJ detailed years of medical evidence and record testimony to support his findings, including, *inter alia*, Plaintiff's hearing testimony that she is nauseous all the time, must rush to the bathroom because she could have fecal accidents, randomly throws up, has diarrhea and goes to the bathroom 10 to 12 times a day, wears incontinence pads, and has bad stomach pain and sometimes vomits on the floor; evidence that medications alleviated some of her symptoms; a notation in May 2019 that Plaintiff's Crohn's disease was without complications; Plaintiff's September 2019 report of abdominal pain, diarrhea, constipation, blood in stool (rarely) and excess gas or bloating, but no fullness after eating, no fecal incontinence, and evidence that, upon examination, her abdomen was normal with no tenderness, guarding or masses, no rebound tenderness or CVA tenderness; Plaintiff's October 2019 report of severe pain/nausea and that she had lost 10 pounds, but also that she was feeling well, and the treatment note reflecting that abdominal pain, constipation, diarrhea, nausea, and vomiting were not present; evidence that she was treating with Stelara; the notation at a gastrointestinal follow up in August 2020, that Plaintiff's Crohn's disease was "stable"; the June 2021 report that Plaintiff was nauseous and had abdominal pain, but that she reported no vomiting, diarrhea, constipation, blood in stool, excess gas, or bloating; a August 2021 notation

that her Crohn's disease was unspecified, without complications; Plaintiff's January 2022 report

that she was nauseous all the time, but that, in February 2022, she complained of right ankle

pain, but made no mention of nausea; evidence that, in April 2022, she presented for left arm

pain and a possible blood clot, her review of systems was negative for vomiting, diarrhea, and

constipation. R. 16–18. The ALJ went on to consider Plaintiff's subjective complaints in

connection with the RFC restrictions found by the ALJ, as follows:

> Overall, the weight of evidence supports the severity of spondylosis at L5, obesity, osteopenia Crohn's disease and gastroparesis. Based on the testimony, the claimant's statements regarding the nature, persistence, and limiting effects of her impairments and symptoms, the objective evidence, and all other evidence of record, the RFC here limits the claimant to a light range of exertional work tasks, but the claimant can occasionally climb ramps and stairs; stoop; kneel; crouch balance or crawl, due to the claimant's spondylosis at L5, osteopenia and obesity. Regarding the claimant's Crohn's disease and gastroparesis, the RFC provides specific limitations that she would require ready access to a restroom, and she would be off tasks approximately 10% of the workday due to additional bathroom breaks and pain. Lastly, due to objective evidence documenting hearing loss, the RFC finds the claimant can only work in moderate noise environments as defined in SCO3.

R. 19. In the view of this Court, this record provides substantial support for the ALJ's decision

to discount, in part, Plaintiff's subjective statements as inconsistent with the record evidence.

*Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges the ALJ's consideration in this regard, arguing first that the ALJ's

"brief consideration" of her testimony "is not supported" because the ALJ "failed to consider"

"numerous clinical and objective abnormalities[.]" *Plaintiff's Brief*, ECF No. 6, p. 36 (referring

to her first argument—"Point I" on page 30 of her initial brief — that highlights a MR

enterography that "revealed new evidence of Crohn's disease of the transverse colon not shown

on imaging done prior to the period at issue"; a colonoscopy that "revealed small bowel mucosa

with mild chronic inactive ileitis, architectural distortion, and mild chronic inflammation and

24

lymphoid aggregates"; a gastric emptying scan that "demonstrated findings consistent with gastroparesis"; an upper EGD that "revealed diffuse inflammation characterized by erythema throughout the stomach"; and clinical examinations that "recorded consistent evidence of abdominal tenderness . . . and physical distress") (citations omitted). Plaintiff also argues that the "only other reason given by the ALJ for discounting" her statements is that "she had some response to treatment[,]" but that such a temporary reduction in symptoms does not equate to a finding of no disability and that she had no significant or lasting relief of her symptoms. *Id*. at 36–37.

The Court is not persuaded that these arguments require remand. While it is true that the ALJ did not expressly discuss the evidence referred to by Plaintiff, she does not explain how this evidence undermines the ALJ's consideration of her subjective complaints. For example, although Plaintiff points to the enterography evidence that showed "new evidence" of her Crohn's disease and to a gastric emptying scan that "demonstrated findings consistent with gastroparesis[,]" *Plaintiff's Brief*, ECF No. 6, pp. 30, 36, the ALJ specifically found at step two that Plaintiff's Crohn's disease and gastroparesis were severe impairments, R. 13, and went on to consider the effects of these impairments when fashioning the RFC. R. 16–19. Plaintiff also points to a colonoscopy and upper EGD that revealed, *inter alia*, inflammation, and to examinations that documented abdominal tenderness and physical distress, *Plaintiff's Brief*, ECF No. 6, pp. 30, 36, but the ALJ specifically considered, *inter alia*, Plaintiff's nausea, stomach pain, vomiting, diarrhea, and urgent bathroom needs. R. 16–19. Importantly, the ALJ did not completely discount Plaintiff's subjective complaints. Instead, the ALJ's RFC analysis makes clear that he took into consideration Plaintiff's complaints when he allowed for "ready access to a restroom" and when he acknowledged that Plaintiff "would be off-task approximately 10% of

the workday due to additional restroom breaks and pain, which can cause difficulty with concentration." R. 16–19; *see also Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"). Finally, the fact that a claimant may continue to experience some pain and discomfort, that fact does not require a finding of disability. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986) ("[W]hile Welch's pain may be constant and uncomfortable, it is not disabling or severe."); *see also Null v. Saul*, No. CV 2:18-759, 2019 WL 2867201, at *3 (W.D. Pa. July 3, 2019) ("It is well-established, however, that a claimant need not be pain free or symptom free to be found not disabled. Rather, the claimant must still show he is unable to perform substantial gainful activity. . . . As set forth above, the ALJ here did not disagree that Plaintiff experiences significant, and sometimes increasing, pain; he found, however, that the pain was sufficiently controlled with medication and other treatment to permit Plaintiff to perform some substantial gainful activity.") (internal citations omitted); *McIntyre v. Berryhill*, No. CV 17-2176, 2018 WL 5962476, at *5 (D.N.J. Nov. 13, 2018) ("It must be remembered, however, that to be fit for work, a claimant need not be pain-free or symptom-free.") (citing *Welch*, 808 F.2d at 270); *Bennick v. Berryhill*, No. 3:16-CV-2391, 2017 WL 2957870, at *12 (M.D. Pa. July 11, 2017) ("Importantly, the ALJ did not find Plaintiff symptom-free: she noted Plaintiff's testimony about the effectiveness of pain medications and acknowledged her previous and future surgeries related to arthritis. As many decisions in the Third Circuit have noted, a claimant 'need not be pain-free to be found 'not disabled' especially when her work issue requires a lower exertional level.'") (citations omitted); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1,

2016) ("The claimant need not be pain-free to be found 'not disabled.'"). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose either Plaintiff's or this Court's own factual determinations. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### C.    Sentence Six Remand

Finally, Plaintiff argues that remand is warranted pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence. *Plaintiff's Brief*, ECF No. 6, pp. 37–40; *Plaintiff's Reply Brief*, ECF No. 11, pp. 5–6. Plaintiff contends that evidence submitted to the Appeals Council is new and material and that there is good cause for her failure to submit this evidence to the ALJ. *Id.* Plaintiff specifically highlights an opinion from Mary Ann Curiba, M.D., a treating rheumatologist, and "reports from Drs. Ghandi [sic] and Goldstein provided to the Appeals Council[.]" *Id.* (citing R. 102–07 (containing a "Fibromyalgia Impairment

Questionnaire" dated July 28, 2023, completed by Dr. Curiba)) (collectively, "opinion evidence").[7] For the reasons that follow, Plaintiff's request is not well taken.

It is axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)."*Id.* at 593; *see also* 42 U.S.C. § 405(g) (providing, *inter alia*, that the court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). Evidence is "new" if it is "not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 834 (3d Cir. 1984) (citations omitted). "To be material, there 'must be a reasonable probability that the new evidence would have changed the outcome' of the Commissioner's decision." *Miller v. Comm'r Soc. Sec.,* 732 F. App'x 162, 165–66 (3d Cir. 2018) (quoting *Beety-Monticelli v. Comm'r of Soc. Sec.,* 343 F. App'x 743, 747 (3d Cir. 2009) and *Szubak*, 745 F.2d at 833). Finally, a finding of "good cause" "requires 'some justification for the failure to acquire and present such evidence to

---

[7] Plaintiff does not specifically identify these "reports from" Dr. Goldstein and Dr. Gandhi. *See Plaintiff's Brief*, ECF No. 6, pp. 37 – 40; *Plaintiff's Reply Brief*, ECF No. 11, pp. 5–6. However, the Court presumes that Plaintiff intends to refer to Dr. Gandhi's Multiple Impairment Questionnaire dated January 26, 2023, R. 535–39, and Gastrointestinal Disorders Questionnaire dated March 17, 2023, R. 363–68; and to a Gastrointestinal Disorders Questionnaire dated July 14, 2023, R. 356–61, completed by Dr. Goldstein.

the [Commissioner].'" *Szubak*, 745 F.2d at 833 (quoting *Brown v. Schweiker*, 557 F. Supp. 190, 192 (M.D. Fla. 1983)).

In the case presently before the Court, even assuming—without definitively deciding—that the evidence proffered by Plaintiff is new and material, the Court concludes that Plaintiff has not carried her burden of showing good cause for her failure to present this or equivalent evidence to the ALJ. The United States Court of Appeals for the Third Circuit has found that the good cause requirement associated with a sentence six remand request seeks to stop an "end-run method of appealing an adverse ruling by the [Commissioner]." *Szubak*, 745 F.2d at 834; *see also Lyons v. Berryhill*, No. CV 18-1106, 2019 WL 4094701, at *1 (W.D. Pa. Aug. 29, 2019) (quoting *Glover v. Comm'r of Soc. Sec.*, No. 1:09-cv-520, 2010 WL 2671291, at *5 (W.D. Mich. June 10, 1010) ("The sentence six 'good cause' requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision.")); *Suarez v. Comm'r of Soc. Sec.*, No. 3:16-CV-02732, 2018 WL 2059553, at *9 (D.N.J. May 3, 2018) ("Plaintiff has made no showing of good cause for failure to produce the evidence to the ALJ, and it will not be considered here."); *cf.* 20 C.F.R. § 404.970(a)(5) (explaining that the following constitutes "good cause" for the Appeals Council to consider additional evidence: "(1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or (3) Some other unusual, unexpected or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier").

Here, Plaintiff was represented by counsel throughout the administrative proceedings, including at the administrative hearing of June 13, 2022. R. 36–42 (reflecting the October 26, 2022, appointment of Charles Binder, Esq.), 817 (indicating that Michael Wagner, Esq.,

represented Plaintiff at the administrative hearing), 856 (reflecting the October 19, 2020,

appointment of Jaclyn Moussallem, Esq.), 938–41 (reflecting the February 23, 2022,

appointment of Christopher Knapp, Esq.); 967–70 (reflecting the May 31, 2022, appointment of

Michael Wagner, Esq.). Plaintiff contends that good cause exists for not submitting the proferred

opinion evidence earlier because "[t]he doctors provided their opinions to the Appeals Council

only after asked to do so by counsel who was retained after the ALJ's decision." *Plaintiff's Brief*,

ECF No. 6, p. 40 (citing *Patterson v. Colvin*, No. 12-4191, 2013 WL 5407199,at *5 (D.N.J. Sept.

25, 2013)).[8] Although Plaintiff now insists that she did not submit the opinion evidence to the

Appeals Council as a function of "gamesmanship" and that "current counsel has had no contact

with prior counsel regarding this case nor does the undersigned have any working relationship

with prior counsel[,]" *Plaintiff's Reply Brief*, ECF No. 11, p. 6, neither current counsel's implicit

differing legal strategy nor former counsel's suggested negligence establishes the necessary good

cause. *See Szubak*, 745 F.2d at 834; *Matos v. Kijakazi*, No. CV 21-02024 (FLW), 2022 WL

1134995, at *8 (D.N.J. Apr. 18, 2022) ("Ultimately, Plaintiff's good cause argument appears to

boil down to either that current counsel disagrees with prior counsel's legal strategy to not obtain

Dr. Paris's report, or that prior counsel was somehow negligent. Neither reason is adequate

justification for submitting new evidence, and, in turn, is not good cause."); *cf. Lyons*, No. CV

---

[8] *Patterson* is inapposite. As the Commissioner points out, *Defendant's Brief*, ECF No. 10, p. 23, *Patterson* predates the applicable regulations defining good cause. *See* 20 C.F.R. § 404.970 (effective Dec. 16, 2020). Moreover, *Patterson* is distinguishable because, in that case, the claimant did not receive the evidence at issue until after the ALJ issued his decision and there "is no indication from the record that Plaintiff is utilizing § 405(g) to make an 'end-run' around the administrative process or otherwise be afforded an unjust additional 'bite of the apple.'" *Patterson*, 2013 WL 5407199, at *5 (citations omitted). Conversely, in the instant case, Plaintiff admits that her current counsel did not solicit the opinion evidence until after the ALJ issued his decision. Although Plaintiff adamantly denies gamesmanship, finding good cause under these circumstances would incentivize claimants to hire new counsel in order to create new evidence following an adverse decision from an ALJ, thus obtaining a forbidden second bite of the apple.

18-1106, 2019 WL 4094701, at *1 ("By her own admission, Plaintiff waited to obtain the Evaluation until finding out that the ALJ had denied her claim. It was her obligation, though, to present her best case to the ALJ, not to wait to see whether she liked his decision to decide whether to submit rebuttal evidence. Such 'sand-bagging' does not constitute good cause.") (citations omitted); *Shuter v. Astrue*, 537 F. Supp. 2d 752, 759–60 (E.D. Pa. 2008) ("Plaintiff's unsubstantiated and unexplained claim that the failure to submit Dr. Squire's records was due to a 'misunderstanding between myself and my representative' does not rise to the level of good cause.") (citations omitted).

Accordingly, Plaintiff's request for remand pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence is not well taken.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DENIES** Plaintiff's request to remand the matter, pursuant to Sentence 6 of 42 U.S.C. § 405(g), for consideration of new and material evidence.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  November 6, 2025                          *s/Norah McCann King*
                                                 NORAH McCANN KING
                                                 UNITED STATES MAGISTRATE JUDGE